JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 10/28/10
```

- - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,                  :        INDICTMENT

　　　　　-v.-                               :        10 Cr. ___ (___)

SAMUEL PHINEAS UPHAM,                       :

　　　　　Defendant.                         :        **10 CRIM 1028**

- - - - - - - - - - - - - - - -x

## COUNT ONE
**(Conspiracy)**

The Grand Jury charges:

### Introduction

1.　At all times relevant to this Indictment, the Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States.

2.　At all times relevant to this Indictment, UBS AG ("UBS") was a corporation organized under the laws of Switzerland. UBS, directly and through its subsidiaries, operated a global financial services business. Among other things, UBS provided banking, wealth management, and asset management services all over the world, including to United States taxpayers living in the Southern District of New York.

3.　Beginning at least in or about 2000, UBS, through various of its employees, engaged in a scheme to assist United States taxpayers who had accounts at UBS in Switzerland in

concealing the existence of the accounts, and the income earned in the accounts, from the IRS.

4.    Among the means by which UBS assisted certain United States taxpayers who had accounts at UBS in concealing the existence of the UBS accounts, and the income earned in UBS accounts, from the IRS, were the following:

a.    Using sham corporations and foundations formed under the laws of offshore jurisdictions to conceal, from the IRS, the ownership by United States taxpayers of certain UBS accounts;

b.    Accepting and including in UBS's account records IRS Forms W8-BEN (Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding) and UBS's equivalent forms that falsely stated that sham offshore corporations and foundations were the beneficial owners of certain UBS accounts when, in fact, as UBS and the United States taxpayers well knew, United States taxpayers were the beneficial owners of those UBS accounts.

**The Defendant**

5.    At all times relevant to this Indictment, SAMUEL PHINEAS UPHAM, the defendant, was a United States citizen.

**UPHAM's Co-Conspirators**

6.    In addition to conspiring with UBS, SAMUEL PHINEAS UPHAM, the defendant, conspired with the following individuals,

2

among others:

a.   Family Member A, UPHAM's close relative, is a
co-conspirator not named as a defendant herein.   At all times
relevant to this Indictment, Family Member A was the beneficial
owner of secret foreign accounts that were not disclosed to the
IRS, as described below.

b.   Swiss Financial Advisor A, an independent
Swiss financial advisor who is a co-conspirator not named as a
defendant herein, was the sole owner of a boutique trust company
based in Zurich, Switzerland.   He became a Certified Public
Accountant after graduating from the University of Applied
Science, School of Economics.   He is also a member of the Swiss
Institut of Certified Accountants and Tax Consultants.   Beginning
in or about 2005, he served as a nominee director of Grand
Partner International Limited, a sham corporation formed to
conceal Family Member A's beneficial ownership of a UBS account,
as described in more detail below.

## The UBS Accounts

7.   At various times relevant to this Indictment,
Family Member A maintained at least the following accounts at UBS
(collectively, the "UBS Accounts"):

### The Rivaro Account

a.   On or about February 3, 1993, in Vaduz,
Liechtenstein, Family Member A opened and caused to be opened a

3

UBS account in the name of Rivaro Foundation ("Rivaro Account"), a sham foundation formed under the laws of Liechtenstein. That same day, Family Member A signed a UBS document naming her as an authorized signatory of the Rivaro Account. Upon Family Member A's death, one-third of the assets and income in the Rivaro Foundation were to be transferred to SAMUEL PHINEAS UPHAM, the defendant.

b.    At all times relevant to this Indictment, Family Member A was the sole beneficial owner of the Rivaro Account. Indeed, in or about April 1994, Family Member A caused to be completed a UBS document listing her as the sole beneficial owner of the Rivaro Account. This document listed Family Member A's home address in New York, New York.

c.    On or about July 22, 2000, in Zurich, Switzerland, Family Member A signed a UBS document instructing UBS as follows: "I would like to avoid disclosure of my identity to the US Internal Revenue Service under the new tax regulations."

d.    On or about March 5, 2004, in New York, New York, Family Member A signed and thereby caused the Rivaro Foundation to enter into an Asset Management Agreement with UBS.

The Grand Partner Account

e.    In or about April 7, 2005, Family Member A and Swiss Financial Advisor A caused to be opened a new UBS

4

account in the name of Grand Partner International Limited ("the Grand Partner Account"), a sham corporation formed under the laws of Hong Kong. Also on or about April 7, 2005, Family Member A and Swiss Financial Advisor A caused to be completed a UBS account opening document affirming that Family Member A was the sole beneficial owner of the Grand Partner Account. Swiss Financial Advisor A signed this document in his capacity as a "Director" of Grand Partner International Limited. Through this document, Family Member A and Swiss Financial Advisor A instructed UBS to send all correspondence regarding the Grand Partner Account to Swiss Financial Advisor A's boutique trust company in Zurich, Switzerland. By doing so, Family Member A, UBS and Swiss Financial Advisor A avoided mailings from UBS of mailing account statements and other correspondence to Family Member A in New York, New York, where such documents would be within the reach of United States law enforcement authorities. Also on or about April 7, 2005, Swiss Financial Advisor A signed a UBS document listing him as an authorized signatory on the Grand Partner Account, in his capacity as a "Director" of Grand Partner International Limited.

       f.  On or about April 7, 2005, January 16, 2006, and February 21, 2008, Family Member A and Swiss Financial Advisor A caused to be completed UBS documents entitled "Substitute Form W-8BEN," in which Swiss Financial Advisor A, in

his capacity as a "Director" of Grand Partner International Limited, falsely certified, under penalties of perjury, that Grand Partner International Limited was the "beneficial owner" of the Grand Partner Account "according to U.S. tax law."

g.   In or about May 2005, Family Member A instructed UBS, through a letter that she signed, to transfer all assets in the Rivaro Account to the newly formed Grand Partner Account and close the Rivaro Account.  Thereafter, UBS did so.

h.   On or about August 19, 2005 and October 16, 2005, Swiss Financial Advisor A signed Asset Management Agreements between UBS and Grand Partner International Limited.

i.   The year-end account balances in Family Member A's Rivaro and Grand Partner Accounts were approximately as follows:

| Year | Rivaro Account Year-end Balance | Grand Partner Account Year-end Balance |
|------|---------------------------------|----------------------------------------|
| 2000 | $5,914,481 | N/A |
| 2001 | $6,248,041 | N/A |
| 2002 | $6,815,602 | N/A |
| 2003 | $7,698,177 | N/A |
| 2004 | $8,251,436 | N/A |
| 2005 | N/A | $8,470,089 |
| 2006 | N/A | $9,959,711 |
| 2007 | N/A | $11,294,650 |
| 2008 | N/A | $9,749,757 |

## Cash Withdrawals from the Grand Partner Account

8.    Any person who physically transports, mails, or
ships, or causes to be physically transported, mailed, or
shipped, currency or other monetary instruments in an aggregate
amount exceeding $10,000 at one time into the United States from
any place outside the United States must immediately file FinCEN
Form 105 with U.S. Customs and Border Protection ("U.S.
Customs").   In addition, any person who receives in the United
States currency or other monetary instruments in an aggregate
amount exceeding $10,000 at one time which have been transported,
mailed, or shipped to the person from any place outside the
United States, must also immediately file FinCEN Form 105 with
U.S. Customs.   FinCEN Form 105 requires the filer to identify
himself or herself, provide information concerning the method of
importation, and report the type and amount of currency or other
monetary instrument imported, among other things.

9.    On various occasions from in or about May 2005 to
in or about December 2008, SAMUEL PHINEAS UPHAM, the defendant,
traveled from New York City to UBS's offices in Zurich,
accompanied on at least one occasion by Family Member A, and
withdrew large sums of currency from the UBS Accounts and/or
other accounts in Switzerland,  and/or other accounts in
Switzerland and then returned to the United States with such sums
of currency, which neither UPHAM nor Family Member A declared as

required on FinCEN Forms 105.   These transactions occurred as
follows:

### UPHAM's $150,000 Cash Withdrawal

a.   On or about May 17, 2005, SAMUEL PHINEAS
UPHAM, the defendant, flew from New York City to London.

b.   On or about May 19, 2005, Family Member A
faxed a handwritten and signed letter to her UBS client advisor
directing him, "Please give [UPHAM] $150,000."

c.   On or about May 20, 2005, Family Member A
spoke by telephone with her UBS client advisor, who confirmed
that her "fax was received in view of [UPHAM]'s visit on Monday."

d.   On or about Monday, May 23, 2005, UPHAM
presented himself at UBS's Zurich offices and withdrew $150,000
in U.S. currency from the Rivaro Account.

e.   On or about May 23, 2005, UPHAM traveled from
London to New York City.

f.   On or about May 25, 2005, UPHAM deposited
approximately $14,500 in currency into a bank account that he
controlled in New York City.

g.   Also on or about May 25, 2005, in Manhattan,
multiple night deposits of cash totaling approximately $20,000
were made into accounts controlled by Family Member A.

h.   At no time in or about May 2005 or thereafter
did UPHAM or Family Member A file FinCEN Form 105 to report the

importation or receipt in or about May 2005 of more than $10,000 in cash from Switzerland and/or the United Kingdom to the United States.

### UPHAM's $300,000 Cash Withdrawal

i.   In or about December 2007, Family Member A directed UBS to give UPHAM approximately $300,000 in cash.

j.   On or about December 11, 2007, UPHAM flew from New York City to Zurich.

k.   On or about December 12, 2007, at UBS's Zurich offices, UPHAM withdrew $300,000 in U.S. currency from the Grand Partner Account.

l.   On or about December 12, 2007, UPHAM flew from London to New York City.  Upon entry into the United States, UPHAM completed a customs declaration form (U.S. Customs and Border Protection Form 6059B) in which he falsely certified that he was not carrying currency or monetary instruments over $10,000 into the United States.

m.   On or about December 14, 2007, Family Member A spoke by telephone with a UBS client advisor, who "[c]onfirmed the withdrawal of USD 300K by [UPHAM]" from the Grand Partner Account.

n.   At no time in or about December 2007 or thereafter did UPHAM or Family Member A file FinCen Form 105 to report the importation or receipt in or about December 2007 of

more than $10,000 in cash from Switzerland and/or the United Kingdom to the United States.

<u>The $60,000 Cash Withdrawal In December 2008</u>

o.    On or about December 6, 2008, SAMUEL PHINEAS UPHAM, the defendant, and Family Member A flew from New York City to London.

p.    On or about December 8, 2008, in Zurich, Family Member A caused approximately $60,000 in U.S. currency to be withdrawn from the Grand Partner Account.

q.    On or about December 10, 2008, Family Member A flew from London to New York City.

r.    At no time in or about December 2008 or thereafter did UPHAM or Family Member A file FinCen Form 105 to report the importation or receipt in or about December 2008 of more than $10,000 in cash from Switzerland and/or the United Kingdom to the United States.

**The Transfer of $8.6 million from UBS to a Liechtenstein Bank Following Major News Reports Concerning the Government's Criminal <u>Investigation Into UBS's U.S. Cross-Border Banking Business</u>**

10.    On or about May 6, 2008, UBS publicly disclosed that United States and Swiss law enforcement authorities were investigating its Swiss-based private banking business for United States taxpayers living in the United States ("UBS's U.S. cross-border banking business").

11.    On or about May 14, 2008, a federal grand jury

sitting in the Southern District of Florida returned an indictment against Mario Staggl, an independent Swiss financial advisor, and Bradley Birkenfeld, a United States citizen who had worked as a director of UBS's U.S. cross-border banking business. The indictment charged Staggl and Birkenfeld with conspiracy to defraud the United States by helping U.S. taxpayers evade taxes by using sham entities to conceal their beneficial ownership of Swiss-based UBS accounts from the IRS.

12. On or about May 15, May 23, and May 30, 2008, a major news organization based in New York, New York again reported that the United States Government was actively conducting a criminal investigation of UBS's U.S. cross-border banking business. One such article, published on or about May 30, 2008, reported that Bradley Birkenfeld was expected to enter a guilty plea and cooperate with investigators, and that UBS was cooperating with the criminal inquiry. The article also stated, "Mr. Birkenfeld's case underscores how federal authorities are stepping up scrutiny of offshore transactions that allow wealthy investors to avoid taxes. The inquiry focuses on American clients of UBS's private bank, based in Zurich[.]".

13. In a number of email exchanges in early June 2008, SAMUEL PHINEAS UPHAM, the defendant – who was at that time in Europe – and Family Member A discussed the need for immediate action, in light of the recent developments. For example:

11

a.    On or about June 1, 2008, Family Member A
sent an email to UPHAM, in which she stated that it is "urgent
that you call immediately, any hour alright. . . new development
requires phone call from only you to z [Zurich] from where you
are. Call without a minuet's [sic] delay for contact numbers and
questions to get answered. Almost certain we must go there
immediately. Do not delay, every second counts."

b.    In emails dated June 5, 2008, Family Member A
again exhorted UPHAM to "call immediately" as "new development
requires immediate action" and asked of UPHAM "why is the
transfer being made to [Financial Advisor A]'s company? And not
to the foundation only?"

14.    On or about June 5, 2008, Family Member A began to
move the funds held in the Grand Partner Account to an account
held in the name of a sham corporation at a bank based in
Liechtenstein ("Liechtenstein Bank A").  Family Member A was the
beneficial owner of the Liechtenstein Bank A account.  Through a
total of nine separate transfers from on or about June 5, 2008
through on or about March 31, 2009, Family Member A moved
approximately $8,554,598 from UBS to Liechtenstein Bank A.
Unlike UBS, Liechtenstein Bank A does not have offices in the
United States.

### The False Tax Returns

15.    Citizens and Lawful Permanent Residents of the

United States who have income in excess of a threshold amount in any one calendar year are obligated to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the IRS. On such returns, United States taxpayers are obligated to report their worldwide income.

16. For calendar years 2006 and 2007, Family Member A filed Forms 1040 with the IRS after signing them under penalties of perjury. For calendar year 2005, Family Member A, in the presence of SAMUEL PHINEAS UPHAM, the defendant, handed her Form 1040 to an IRS official without signing it. For each of these years, 2005 through 2007, Family Member A's returns were prepared by UPHAM. On each of these returns, UPHAM willfully failed to report income earned by Family Member A from the Rivaro and Grand Partner Accounts. For 2005 to 2007, these approximate amounts were at least as follows:

| Calendar year | Adjusted Gross Income Reported on Form 1040 | Total Tax Reported on Form 1040 | Unreported Income from UBS Accounts | Additional Federal Tax Due and Owing |
|---------------|------------------------|----------------|----------------|----------------|
| 2005 | $151,892 | $6,202 | $491,089 | $136,300 |
| 2006 | $173,711 | $8,486 | $773,517 | $174,954 |
| 2007 | $178,767 | $3,924 | $723,882 | $191,630 |
| Totals | $504,370 | $18,612 | $1,988,488 | $502,884 |

17. In addition, on Schedule B of Form 1040, a U.S. taxpayer must indicate whether, at any time during the relevant calendar year, the taxpayer had "an interest in or a signature or

other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the taxpayer answers that question in the affirmative, then he or she must indicate the name of the country in which the account is located.

18. For calendar years 2005 though 2007, SAMUEL PHINEAS UPHAM, the defendant, prepared Schedules B to Forms 1040 on behalf of Family Member A, falsely reporting that Family Member A did not have an interest in, or a signature or other authority over, a financial account in a foreign country, when, in truth and in fact, as UPHAM and Family Member A well knew, Family Member A was the beneficial owner of the UBS Accounts during those years.

### Statutory Allegations

19. From at least in or about 2005 through in or about 2009, in the Southern District of New York and elsewhere, SAMUEL PHINEAS UPHAM, the defendant, UBS, Swiss Financial Advisor A, and Family Member A, co-conspirators not named as defendants herein, and others known and unknown, unlawfully, willfully, and knowingly, did combine, conspire, confederate and agree together and with each other to defraud the United States and an agency thereof, to wit, the Internal Revenue Service of the United States Department of the Treasury, and to commit offenses against the United States, to wit, violations of Title 26, United States

Code, Section 7206(2) and Title 31, United States Code, Section 5332.

## Objects of the Conspiracy

20. It was a part and an object of the conspiracy that SAMUEL PHINEAS UPHAM, the defendant, and others known and unknown, unlawfully, willfully, and knowingly would and did defraud the United States of America and the IRS by impeding, impairing, defeating, and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of income taxes.

21. It was further a part and an object of the conspiracy that SAMUEL PHINEAS UPHAM, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, would and did aid and assist in, and procure, counsel, and advise the preparation and presentation under, and in connection with matters arising under, the internal revenue laws of the United States, of a return, affidavit, claim, and other document, in violation of Title 26, United States Code, Section 7206(2).

22. It was further a part and an object of the conspiracy that SAMUEL PHINEAS UPHAM, the defendant, and others known and unknown, unlawfully, willfully, and knowingly would and did, with the intent to evade a currency reporting requirement under Title 31, United States Code, Section 5316, knowingly conceal more than $10,000 in currency and other monetary

instruments on the person of individuals and in conveyances, articles of luggage, merchandise, and other containers, and would and did transport and transfer and attempt to transport and transfer such currency and monetary instruments from places outside the United States, to wit, Switzerland and the United Kingdom, to a place within the United States, to wit, New York, New York, in violation of Title 31, United States Code, Section 5332.

## Means and Methods of the Conspiracy

23. Among the means and methods by which SAMUEL PHINEAS UPHAM, the defendant, and his co-conspirators, would and did carry out the conspiracy were the following:

a. Family Member A established UBS accounts in the name of sham entities for the purpose of hiding her beneficial ownership of the accounts from the IRS.

b. Swiss Financial Advisor A signed UBS's substitute forms for IRS Forms W8-BEN that falsely declared, under penalties of perjury, that these sham entities were the beneficial owners of Family Member A's accounts, when, as the co-conspirators well knew, Family Member A was the sole beneficial owner of these accounts.

c. To avoid detection by United States law enforcement authorities, UPHAM traveled to Switzerland from the United States, including on one occasion with Family Member A, in

order to withdraw funds, in the form of U.S. currency, from the UBS and/or Liechtenstein Bank A Accounts, and then imported the currency into the United States without notifying U.S. Customs, as required.

d.     After the criminal investigation of UBS and its clients became publicly known, UPHAM and Family Member A communicated with Financial Advisor A, with one another, and with others about transferring funds from UBS to another European bank, and Family Member A's funds from the UBS Accounts were thereafter transferred from UBS to Liechtenstein Bank A.

### Overt Acts

24.     In furtherance of the conspiracy and to effect its illegal objects, SAMUEL PHINEAS UPHAM, the defendant, and his co-conspirators, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.     From on or about July 21, 2000 to on or about October 3, 2006, UPHAM and/or Family Member A met and spoke on numerous occasions with UBS client advisors in New York, New York.

b.     On or about May 23, 2005, UPHAM flew from the United Kingdom to New York, carrying approximately $150,000 in undeclared cash.

c.     On or about December 12, 2007, UPHAM flew from the United Kingdom to New York, carrying approximately

17

$300,000 in undeclared cash.

       d.   On or about December 28, 2007, Family Member A filed and caused to be filed with the IRS an Individual Income Tax Return, Form 1040, for Family Member A and her spouse for calendar year 2005, which had been prepared by UPHAM, which failed to report income that Family Member A had earned in the UBS Accounts that year, and which falsely reported that Family Member A did not have an interest in, or signature or other authority over, a foreign bank account in 2005.

       e.   On or about January 8, 2008, Family Member A filed and caused to be filed with the IRS an Individual Income Tax Return, Form 1040, for Family Member A and her spouse for calendar year 2006, which had been prepared by UPHAM, which failed to report income that Family Member A had earned in the UBS Accounts that year, and which falsely reported that Family Member A did not have an interest in, or signature or other authority over, a foreign bank account in 2006.

       f.   On or about April 12, 2008, Family Member A filed and caused to be filed with the IRS an Individual Income Tax Return, Form 1040, for Family Member A and her spouse for calendar year 2007, which had been prepared by UPHAM, which failed to report income that Family Member A had earned in the UBS Accounts that year, and which falsely reported that Family Member A did not have an interest in, or signature or other

authority over, a foreign bank account in 2007.

g.    From on or about June 5, 2008 through on or about March 31, 2009, Family Member A caused approximately $8,554,598 of her funds to be moved from UBS to Liechtenstein Bank A.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH FOUR
### (Aiding and Assisting in the Preparation of False and Fraudulent U.S. Individual Income Tax Returns)

The Grand Jury further charges:

25.    The factual allegations of paragraphs 15 through 18 are restated as if fully alleged herein.

26.    On or about the filing dates set forth below, for the calendar years set forth below, in the Southern District of New York and elsewhere, SAMUEL PHINEAS UPHAM, the defendant, unlawfully, willfully, and knowingly did aid and assist in, and procure, counsel, and advise the preparation and presentation under, and in connection with matters arising under, the internal revenue laws of the United States, of a return, affidavit, claim, and other document, to wit, United States Individual Income Tax Returns, Forms 1040, on behalf of Upham's close relative ("Family Member A") for the calendar years listed below, which returns were fraudulent and false as to material matters, in that UPHAM: (a) failed to report income received by Family Member A in one or more bank, securities, and other financial accounts at UBS; and

(b) failed, on Schedule B, Part II, line 7a, to report that Family Member A had an interest in, or a signature or other authority over, bank, securities, and other financial accounts in Switzerland, whereas UPHAM then and there well knew and believed that Family Member A had received income in one or more accounts at UBS and had an interest in, or a signature or other authority over, bank, securities, and other financial accounts in Switzerland:

| Count | Calendar year | Approximate Date of Filing |
|-------|---------------|----------------------------|
| Two | 2005 | December 28, 2007 |
| Three | 2006 | January 1, 2008 |
| Four | 2007 | April 12, 2008 |

(Title 26, United States Code, Section 7206(2); Title 18, United States Code, Section 2.)

_____
FOREPERSON

_Preet Bharara_
PREET BHARARA
United States Attorney

20

===============================================

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

===============================================

### UNITED STATES OF AMERICA

### -v.-

### SAMUEL PHINEAS UPHAM,

### Defendant.

===============================================

### INDICTMENT

10 Cr. _____  (_____)


(18 U.S.C. § 371, 2; 26 U.S.C. § 7206(2))




_____  PREET BHARARA
                                  United States Attorney.


**A TRUE BILL**


_____
                                  Foreperson.

===============================================

Oct. 28, 2010

Indictment filed

A/w issued

ordered filed under seal.

                        Freeman, USMJ